UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| AT&T, INC., AS FIDUCIARY OF THE SBC MEDICAL AND GROUP LIFE INSURANCE PLAN - CUSTOMCARE )))) | |
| Plaintiff, ) | Civil Action No. SA-07-CA-343-XR |
| ) | |
| VS. ) | |
| ) | |
| JAKE FLORES and MIDANI, HINKLE AND COLE )))) | |
| Defendants. | |

**ORDER**

Plaintiff AT&T, Inc. filed suit as fiduciary of the SBC Medical and Group Life Insurance Plan (the Plan) against Plan beneficiary Jake Flores, seeking reimbursement for medical expenses paid out on Mr. Flores's behalf. In short, Mr. Flores received severe injuries following a car accident that left him a paraplegic. The Plan expended $315,512.62 in medical expenditures for Mr. Flores, who subsequently received a settlement against a third-party tortfeasor for $850,000. Upon completion of Mr. Flores's third-party settlement agreement, Plaintiff commenced suit seeking reimbursement for its medical expenditures pursuant to the terms of the Summary Plan Description governing the contractual relationship between the Plan and its beneficiaries.

On June 16, 2008, Plaintiff filed a motion for summary judgment (Docket No. 22) seeking "1) the imposition of a constructive trust and equitable lien in favor of the Plan upon the settlement funds ($315,512.62); 2) a declaration of the Plan's ownership of the settlement proceeds up to the amount of payments made; and 3) an order directing Mr. Flores and his attorneys to turn over such

proceeds to the Plan."[1] Despite a month's passage since this motion's filing, Defendants have not responded.

Having considered the evidence and arguments submitted by Plaintiff along with the applicable case law, the Court GRANTS Plaintiff's motion for summary judgment.

**Factual Background**

Plaintiff provides healthcare benefits to SBC Communications employees and their family members. Plaintiff asserts that the healthcare plan it provides qualifies as an Employee Retirement Income Security Act of 1974 (ERISA) plan. Moreover, Plaintiff contends that the Summary Plan Description contains a subrogation/right of reimbursement provision that requires a Plan beneficiary who has been injured by a third-party and who recovers from that third-party to immediately repay the Plan for the medical expenses paid on the beneficiary's behalf.

Jake Flores, the son of former SBC Communications employee Maria Flores, was injured in an automobile accident in November 2003 that left him a paraplegic. Jake received $315,512.62 worth of medical coverage from the Plan.

Sometime thereafter, Mr. Flores settled with a third-party for $850,000 for claims arising from his injury. It is Plaintiff's position that because of this settlement agreement, Mr. Flores was obligated under the terms of the Plan to reimburse it for the medical expenses it paid on his behalf. When Mr. Flores failed to do so, Plaintiff brought suit alleging violations of ERISA and a claim for reimbursement.

---

[1] Docket No. 22 at 15.

**Analysis**

Summary Judgment Standard of Review

The Federal Rules provide that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[3] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[4]

Summary Plan Description

Under the boldfaced title **"SUBROGATION/RIGHT OF REIMBURSEMENT (THE PLAN'S RIGHT TO RECOVER PAYMENT FROM A THIRD PARTY IF YOU ARE INJURED OF DISABLED**)," the Summary Plan Description provides:

> If you are injured or disabled as a result of the negligent or wrongful act or omission of a third party, the Plan will pay benefits, but reserves the right to recover those payments from the person who injured you or his of her insurance company. . . The plan shall have a lien on any amounts recovered from any other source to the extent permitted by applicable law. The amount of money to be subrogated shall not be reduced by any legal fees or costs.

---

[2] FED. R. CIV. P. 56(c).

[3] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[4] FED. R. CIV. P. 56(e)(2).

> You are required to cooperate fully with the Claims Administrator or its agents in the exercise of such subrogation rights. . .
>
> If you recover any amount for your injury by way of a settlement or judgment in or out of a court of law, you are required to reimburse the Claims Administrator for the amounts paid under CustomCare up to the amount recovered, without any reduction for legal fees or costs. The Plan shall have a lien upon any such recovery to the extent permitted by applicable law.[5]

According to the Plan Administrator, the term "you" used above "includes any person receiving benefits under the Plan."[6] As a result, the Plan Administrator contends that "AT&T is entitled to reimbursement of the medical expenses paid on behalf of Jake Flores due to his settlement with a third party."[7]

Mr. Flores's settlement funds are currently deposited in a trust account belonging to his attorneys. Plaintiff seeks a constructive trust and equitable lien to access those funds and receive reimbursement for the amount it is allegedly owed.

Equitable Relief under ERISA - Law Firm Trust Account

In *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*,[8] the Fifth Circuit confronted a case similar to this one. A plan participant was injured in an automobile accident, and the ERISA qualified plan paid for his resulting medical expenses. The plan contained a subrogation clause similar to the one in this case that enabled the plan to subrogate or otherwise recover the benefits that it paid if the plan beneficiary later recovered a judgment or

---

[5] Docket No. 22, Appendix at 13.

[6] *Id.* at 15.

[7] *Id.*

[8] 354 F.3d 348 (5th Cir. 2003).

settlement payment related to the cause of his injuries. The plan brought suit against the plan participant and the law firm representing him, seeking a constructive trust over settlement funds deposited in the firm's trust account.

As a threshold matter, the *Bombardier* court held that it possessed subject matter jurisdiction over the action even though the Plan sought the imposition of a constructive trust over funds held in a law firm's trust account, as opposed to funds maintained in the direct possession of the plan beneficiary.[9] 29 U.S.C. § 1132(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) **to obtain other appropriate equitable relief** (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[10] The court determined that this statutory provision did not require the law firm to possess a contractual or fiduciary duty to the ERISA plan before it could be named as a defendant in a suit for equitable relief. It held that § 1132(a)(3) "authorizes a cause of action against a non-fiduciary, non-'party in interest' attorney-at-law when he holds disputed settlement funds *on behalf of* a plan-participant client who is a traditional ERISA party."[11] Because Mr. Flores is a beneficiary of an ERISA plan and thus a traditional ERISA party, the Plan's suit is permissible against the law firm that holds the disputed settlement funds on Mr. Flores's behalf.

Equitable Relief under ERISA - Qualification of Plaintiff's Claim

The plan in *Bombardier* sought 1) "the imposition of a constructive trust" over the funds held

---

[9] *See Id*. at 352.

[10] Emphasis added.

[11] *Bombardier*, 354 F.3d at 353 (emphasis original).

in the law firm's trust account, 2) a declaration that the plan was entitled to a determinable amount of funds in the account, 3) an order requiring the transfer of legal title for the "converted property" to the plan, and 4) an order prohibiting the law firm from distributing the funds claimed by the plan to anyone besides the plan.[12] With the exception of an additional request for an equitable lien, the relief sought by the Plaintiff in the present case is the same as that sought in *Bombardier*. This claim similarity is noteworthy, as the facts in the two cases are, for purposes of legal analysis, closely akin.

The *Bombardier* court set forth a three-pronged test to determine whether a claim qualified as equitable relief for purposes of § 1132(a)(3). The inquiry concerns whether the Plan seeks to recover funds "(1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary."[13] Like with the plaintiff's claim in *Bombardier*, Plaintiff AT&T's claim here is for a specific set of funds previously paid out by the Plan. Additionally, the subrogration/right of reimbursement language included in the Summary Plan Description makes the disputed monies "belong in good conscience to the Plan."[14] Finally, the disputed funds are located in the trust account maintained by Mr. Flores's lawyers, who are clearly acting as agents on his behalf. As a result, Mr. Flores "has ultimate control over, and thus *constructive* possession of, the disputed funds."[15]

Thus, given the striking similarities between the *Bombardier* case decided by the Fifth Circuit and the present one, this Court finds directly applicable much of the analysis of that decision to the

---

[12] *Id*. at 350.

[13] *Id*. at 356.

[14] *Id*.

[15] *Id*. (emphasis original).

claims of the present controversy. With the exception of the request for an equitable lien, Plaintiff AT&T has essentially sought the same relief as that sought by and granted to its counterpart in *Bombardier*.

Equitable Lien

As for equitable liens,[16] the Supreme Court recently considered their usage in a case similar to this one. Chief Justice John Roberts framed the issue in *Sereboff v. Mid Atlantic Medical Services, Inc.*[17] as whether an ERISA fiduciary "may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party."[18] The unanimous Court held that the ERISA fiduciary could recover through such a suit, including through attachment of an equitable lien.

The Court found that such lien could attach even to funds not yet in existence at the time a contract was formed.[19] As the Court explained, it was a "familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing."[20] Accordingly, the Court found that the ERISA Plan "could rely on a

---

[16] An equitable lien is "a right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund or property." BLACK'S LAW DICTIONARY 942 (8th ed. 2004).

[17] 547 U.S. 356 (2006).

[18] *Id*. at 359.

[19] *See Id*. at 357-8. The contractual agreement in the present case is expressed through the terms of the Summary Plan Description.

[20] *Id*. at 357.

familiar rule of equity to collect for the medical bills it had paid on the [beneficiaries'] behalf."[21]

Relying upon the reasoning in *Sereboff*, this Court finds that Plaintiff AT&T's request for an equitable lien is meritorious and should be granted.

Made Whole Doctrine

Finally, Mr. Flores asserts that the "made whole doctrine" shields him from the Plan's quest for equitable relief.[22] Under this doctrine, "a plan is not entitled to recoup anything by way of subrogation or reimbursement until the beneficiary has been made entirely whole through recovery of all compensatory damages to which he is entitled."[23] According to the Fifth Circuit, however, even if a Summary Plan Description does not explicitly address the made whole doctrine, so long as the document makes clear that the beneficiary owes a duty of subrogation/reimbursement to the Plan, the Plan's right to such reimbursement trumps the beneficiary's made whole defense.[24]

---

[21] *Id*. at 364.

[22] *See* Docket No. 2 at 1. Defendants assert additional defenses in their Answer, including that the Plan is not self-funded, reimbursement of medical expenses would be inequitable, Plaintiff's reimbursement claim would constitute an unconstitutional taking in violation of the Fifth Amendment, the defense of laches applies, and Plaintiff's claim would result in unjust enrichment. Concerning these bald, conclusory allegations, Defendants provide no explication of their applicability to this case, nor support them contextually with evidentiary or case law support. Finding these unsupported, unelaborated allegations to be without merit, the Court holds that they provide no defense in this case against the relief that Plaintiff seeks.

[23] Sunbeam-Oster Company, Inc. v. Whitehurst, 102 F.3d 1368, 1372 (5th Cir. 1996).

[24] *See Id*. at 1376. "We hold that . . . in the absence of any expressly selected alternative standard (such as Pro-Rata or Make Whole) which deviates from the anticipated Plan Priority norm - such language vest[s] the Plan with an unconditional and unequivocal Plan Priority right to reimbursement for the full amount of the medical benefits it paid on a participant's behalf, from any and all funds that a participant might recover from, inter alia, a third party tortfeasor or his insurer." *Id*.

**Conclusion**

Following the legal framework laid out by the Fifth Circuit in *Bombardier* and the Supreme court in *Sereboff*, the Court GRANTS Plaintiff's motion for summary judgment for 1) the imposition of a constructive trust and an equitable lien on the settlement funds in the amount of $315,512.62, 2) a declaration of the Plan's ownership of the settlement proceeds in that amount, and 3) an order directing Mr. Flores and his counsel to submit such proceeds to the Plan and directing them to execute all necessary documents to transfer legal title of the converted property to the Plan.

The Clerk is to enter Judgment on Plaintiff's behalf, with Defendants to bear costs for both sides. Plaintiff has fourteen (14) days from the issuance of this Order to enter a bill of costs with the Court.

It is so ORDERED.

SIGNED this 17th day of July, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE